IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LISA BARNHILL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:21-cv-1377 (AJT/WEF) |
| ) | |
| MERRICK GARLAND, ) | |
| *U.S. Attorney General,* ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION and ORDER

In this retaliation and retaliatory hostile work environment action under Title VII of the Civil Rights Act of 1964,[1] Defendant has filed a Motion for Summary Judgment ("the Motion"), [Doc. No. 51]. A hearing was held on the Motion on May 3, 2023, following which the Court took the matter under advisement. Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto, the argument of counsel at the hearing, and for the reasons stated below, the Motion is GRANTED.

### Background

From April 2010 to September 2016, Barnhill was employed by the United States Drug Enforcement Agency ("DEA") as a Group Supervisor ("GS")[2] at the DEA's District Office in Little Rock, Arkansas (the "LRDO"). [Doc. No. 52] at 2 ¶ 1. Barnhill supervised Diversion

---

[1] The Court has twice dismissed Barnhill's claims based on discrimination, a failure to promote and the EEO Complaint filed against Barnhill by DI Pamela Lee. *See* [Doc. No. 54] at 7; [Doc. No. 21]. It has also rejected Barnhill's contention that, based on the facts she alleged, a retaliatory motive can be imputed to a relevant decisionmaker under a cat's paw (i.e. proximate cause) theory of liability, especially when that decisionmaker exercised considerable autonomy from the allegedly retaliating supervisor or employee. *See* [Doc. No. 54] at 5-6. The Court therefore finds of no consequence those recited facts relevant only to those already dismissed claims.

[2] Throughout their written submissions, the Parties have used multiple abbreviations. Of note are Special Agent in Charge ("SAC"), Assistant Special Agent in Charge ("ASAC"), Group Supervisor ("GS"), temporary duty assignment ("TSY"), diversion investigator ("DI"), Little Rock District Office ("LRDO"), Performance Improvement Plan ("PIP"), and Management Review ("MR").

1

Investigators (individually referred to as a "DI") who policed pharmaceuticals sold on the black market. *Id*. Beginning in 2012, several of Barnhill's subordinates began to file complaints about Barnhill. *See Id*. at 2-4 ¶¶ 2-3, 6. As a result of incidents that had been brought to Barnhill's supervisor's attention, Assistant Special Agent in Charge ("ASAC") Shepherd contemplated a management review of the LRDO Diversion Group in September 2014, but the review was never implemented. *Id*. at 3 ¶ 6. At the end of 2014, ASAC Shepherd completed a performance evaluation for Barnhill in which he noted that she was "falling short in areas of Leading People and Individual Work Productivity... due to her inability to resolve problems and concerns with team members and managers." *Id*. at 3-4 ¶ 7. In 2015, ASAC Shepherd communicated to Barnhill that a management review would be necessary to address complaints about how Barnhill had created a hostile and coercive work environment. *Id*. at 4 ¶ 8. This contemplated management review did not proceed.

In September 2015, Barnhill filed a complaint of discrimination based on her race and gender with the DEA Equal Employment Opportunity ("EEO") counselor. *Id*. at 4-5 ¶ 10. On October 13, 2015, ASAC Shepherd provided an assessment of Barnhill, consistent with his earlier performance evaluations, when she applied for a new position in New Mexico, in which he stated that Plaintiff was not a good leader and had difficultly resolving problems with her subordinates. *Id*. Barnhill was not selected for the position in New Mexico. *Id*. at 6 ¶ 12. On October 27, 2015, ASAC Shepherd provided Barnhill her performance evaluation for 2014-2015, which identified issues that Barnhill had with leadership, communication, and her inability to resolve problems with her subordinates. *Id*. at 5 ¶ 13.

In October of 2015, ASAC Anthony Lemons (who temporarily replaced ASAC Shepherd as Barnhill's supervisor) made a request to his supervisor, Special Agent in Charge ("SAC") Keith Brown, that a management review be initiated for the LRDO Diversion Program based on the complaints received about Barnhill. *Id*. at 5 ¶ 11. The management review of the LRDO Diversion Group began on November 17, 2015. *Id*. at 6 ¶ 16. As a result of the management review, Barnhill was placed on a temporary duty assignment (or "TDY") in New Orleans, Louisiana. *Id*. at 6-7 ¶ 17. Before the management review concluded, ASAC Shepherd was replaced by ASAC Matthew Barden, and SAC Brown was replaced by SAC Stephen Azzam. *Id*. at 8-9 ¶ 19. After this change, the management review was concluded. The review found that the LRDO diversion group had "low morale," that Barnhill "engaged in vindictive, intimidating, and/or unprofessional conduct," and that Barnhill was unfit for a supervisory role over new personnel. *Id*. at 9 ¶ 20. After the management review concluded, Barnhill continued her temporary duty assignment until February 2016. *Id*. at 11 ¶ 21. SAC Azzam took Barnhill off the assignment in that month but purportedly did not reassign Barnhill to the LRDO because of the problems identified with Barnhill's leadership and her conflicts with subordinates. *Id*. Barnhill eventually retired from the DEA on October 23, 2021. [Doc. No. 27-1] at 2.

Based on these series of events, in particular the management review and the TDY to New Orleans, Barnhill claims that SAC Brown and ASAC Shepherd retaliated against her for her filing an EEO Complaint and that these two supervisors created a retaliatory hostile work environment. Defendant contends that there are no genuine issues of material facts and Defendant is entitled to judgment as a matter of law since Barnhill (1) has failed present evidence sufficient to establish a *prima facie* case of retaliation of any description; (2) it has articulated a legitimate non-retaliatory reason for the relied upon actions; and (3) she has offered

insufficient evidence that the Defendant's legitimate reasons for taking those actions is pretextual.

## Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007). "[W]here the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) (citations omitted).

## Discussion

"Title VII prohibits an employer from retaliating against an employee for opposing discriminatory practices in the workplace." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 194 (4th Cir. 2019) (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 255 (4th Cir. 1998); 42 U.S.C. §2000e-3(a)). To demonstrate a claim of retaliation, a plaintiff may provide either direct evidence of discrimination or utilize the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). Under the burden shifting framework, a plaintiff can make a *prima facie* case by showing her "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). After a plaintiff makes a *prima facie* case, the burden shifts to the defendant to produce a non-retaliatory reason for taking the adverse action, and then the burden returns to the plaintiff to demonstrate by a preponderance of the evidence why that reason was merely pretext for discrimination. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-256 (1981)).

*(1) Plaintiff fails to establish the causal connection prong of her prima facie case of retaliation.*

To "establish a causal relationship between the protected activity and termination, a plaintiff must show that decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021)

(citations omitted); *see also Dowe v. Total Action Against Poverty*, 145 F.3d 653, (4th Cir. 1998) ("the employer's knowledge that plaintiff engaged in a protected activity is absolutely necessary to establish the third element [a causal connection] of the prima facie case").

Plaintiff has failed to present evidence sufficient to establish any causal relationship between protected activity and the initiation of the management review that led to her temporary duty assignment. Dispositive in that regard is that the record evidence establishes, without contrary evidence, that the relevant decision maker was Acting ASAC Lemons, rather than ASAC Shepherd or SAC Brown. *See* [Doc. No. 52-3] at 3 (the management review report indicates that the review began based on Lemons' request to SAC Brown.) At best, Barnhill only offers speculation that somehow, and at some point, Shepherd gained knowledge of protected activity and then communicated that knowledge to Lemons.[3] But that speculation does not create

---

[3] Barnhill argues that ASAC Shepherd revised his ratings of Barnhill shortly after she made her EEO Complaint and that this change allows both the inference that this downward change in ratings was made in retaliation for the EEO Complaint and also that Shepherd had gained knowledge of the EEO Complaint. However, the draft document that Barnhill relies on to advance this position is unsigned, undated, and was unauthenticated during Shephard's deposition or otherwise. This document alone is accordingly insufficient to establish any inference of a causal connection between Barnhill's protected activity and an adverse employment action. *See Roberts*, 998 F.3d at 126 (a plaintiff's burden to demonstrate knowledge "requires more evidence than mere curious timing coupled with speculative theories.") (citation and internal quotation marks omitted). Plaintiff also contends that her supervisor's knowledge of her protected activity can be inferred from her attempt to enter into mediation on September 25, 2015, [Doc. No. 56] at 7, so as to raise an inference of causation based on temporal proximity between that protected activity and her non-selection on October 13 and October 27, 2015, for promotion to the New Mexico job. However, the evidence in the record shows that ASAC Shepherd first became aware of Barnhill's EEO complaint on November 6, 2015, after making his recommendations and evaluations of Barnhill, assessments which were consistent with his earlier evaluations of her, both before her EEOC complaint was filed in September 2015 and before her non-selection in October of the same year. Similarly, the evidence is insufficient to establish that either Shepherd or Brown knew of Barnhill's protected activity prior to the management review that led to her temporary duty assignment. *See* [Doc. No. 52] at 7 ¶ 14; [Doc. No. 52-6] at 21; [Doc. No. 52-3] at 3 (The management review reports states, "On October 7, 2015, Acting ASAC Lemons contacted SAC Keith Brown and requested that a management review be conducted as soon as possible.") Moreover, Plaintiff has provided no evidence that ASAC Shepherd or another relevant decision maker was aware of her request for alternative dispute resolution. In that regard, ASAC Shepherd did not testify that he participated in or was made aware of any effort to enter into mediation with Barnhill. [Doc. No. 56-1] at 9-11. In fact, the testimony Barnhill relies on only shows that Shepherd had knowledge of a mediation with a different individual unconnected to Barnhill's claims. *See* [Doc. No. 56-1] at 9. Similarly, the relied upon document for this argument, [Doc. No. 52-4], only shows the signatures of Barnhill and an EEO counselor and does not allow the reasonable inference that ASAC Shepherd or another relevant decisionmaker was aware of Barnhill's request for alternative dispute resolution. In total, based on the record before the Court, no reasonable factfinder could find that any relevant decision maker had the required knowledge of Barnhill's protected activity.

a dispute of material fact that precludes summary judgment. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.") (citing *Barwick v. Celotex Corporation*, 736 F.2d 946, 963 (4th Cir. 1984)). As there is no evidence from which a reasonable factfinder could conclude that a relevant decision maker had actual knowledge of Barnhill's protected activity prior to implementation of the management review, Barnhill cannot make a *prima facie* case for retaliation.

Without any evidence that a relevant decision maker had actual knowledge of Barnhill's protected activity prior to the implementation of the management review, Plaintiff has failed to present evidence sufficient to establish a causal connection between her protected activity and the adverse employment action (the management review and subsequent temporary duty assignment). Similarly, the actions[4] that constitute Barnhill's claim for a retaliatory hostile work environment are the same actions that support Barnhill's claim for retaliation; and for the same reason, Barnhill cannot show a causal connection between her protected activity and her claimed retaliatory hostile work environment. *See Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 840 (E.D. Va. 2016) (A claim for retaliatory harassment must demonstrate "a causal link between the protected activity and the harassment.")

---

[4] A retaliatory hostile work environment or retaliatory harassment "must be so severe and pervasive as to dissuade a reasonable worker from making or supporting a charge of discrimination." *Laurent-Workman v. Wormuth*¸ 54 F.4th 201, 217 (4th Cir. 2022). The Court has previously dismissed claims raised in the Complaint based on most of the behavior that Barnhill now claims constitutes a retaliatory hostile work environment on the grounds that there was either no temporal proximity between the actions and the protected activity or the actions predated any protected activity. *See* [Doc. No. 54] at 7. Additionally, much of the behavior relied upon by Barnhill (such as being left out of meetings) is simply too trivial or generalized to constitute either an adverse action or severe and pervasive harassment which would create a genuine issue of material fact on the retaliatory hostile work environment claim. *See Evans*, 936 F.3d at 195 (affirming that general complaints about worse treatment based on being left out of meetings was not evidence of any "materially adverse" retaliatory act). For these reasons, the Court now considers Barnhill's remaining claims for retaliation and a retaliatory hostile work environment based on the temporary duty reassignment resulting from the management review.

*(2) Defendant has proffered a legitimate non-retaliatory reason for any adverse employment actions and Plaintiff has failed to present sufficient evidence of pretext.*

Even assuming, *arguendo,* that Barnhill has established a *prima facie* case, Defendant is entitled to judgment as a matter of law based on its assertion of a legitimate non-retaliatory reason for the actions taken and Barnhill's failure to present evidence sufficient to establish that the legitimate reason is pretextual.

As its legitimate non-retaliatory reason for the management review and Barnhill's reassignment, the Defendant proffers that there were complaints about Barnhill as a supervisor and that she had serious conflicts with several of her subordinates. The Defendant has presented unchallenged evidence that complaints about Barnhill began as early as 2012 (a time frame which far predates any protected activity that Barnhill allegedly engaged in).[5] As a result of these complaints, ASAC Lemons asked SAC Brown to initiate the management review. *See* [Doc. No. 52-1] at 123 (SAC Brown testifies the decision to implement the management review began, "Sometime in October after I spoke with ASAC Lemons. I had been contemplating it for a period of time, but that was the final determinant to make me move forward with [the management review].") Defendant also asserts based on the deposition testimony of SAC Brown, also without contrary evidence, that the temporary duty assignment was implemented to remove Barnhill from the LRDO office until the management review was completed so to limit any potential conflicts that might arise if Barnhill were in the office while the management review was underway. *See* [Doc. No. 52] at 21-22; [Doc. No. 52-7] at 135-136 ("I felt like that leaving

---

[5] Additionally, this evidence shows a legitimate reason for Barnhill's poor performance ratings on her leadership skills and communication, *viz*., she actually had issues with communication and managing her subordinates. The evidence that Barnhill had begun to receive poor performance ratings in these categories well before she engaged in protected activity, *see* [Doc. No. 52-1] at 26-28, precludes a finding that this purportedly adverse employment action was motivated by a retaliatory animus. *See e.g., Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))).

Ms. Barnhill there while this was all going on was a risk to sort of the integrity of the management review but equally was a risk to Ms. Barnhill.") Defendant has also introduced evidence that in the DEA it is standard practice to remove an individual from an office when there is a management review being conducted to investigate accusations of a hostile work environment. [Doc. No. 52-6] at 45; [Doc. No. 56-7] at 67 (describing an individual being assigned to temporary duty assignment when a management review was conducted in El Paso, Texas).

Barnhill has not challenged that there were multiple complaints about her made by several of her subordinates before she engaged in any protected activity. Similarly, Barnhill has not presented evidence that an employee, such as herself, who is accused of creating a hostile work environment, is not regularly put on a temporary duty reassignment during a management review. Rather, in substance, Barnhill argues that a jury could find that Defendant's asserted reasons for its treatment of her were not its true reasons, but a pretext for its treatment, by simply disbelieving all of the witnesses and documents that the Defendant has offered in support of its legitimate business reasons for instituting the management review and the temporary duty assignment. [Doc. No. 52] at 19. But there is nothing facially unreasonable or suspicious about the actions taken, or anything that calls into question whether Defendant honestly believed the reasons for its actions, or the facts relied on in support of Defendant's explanation for its treatment of her; and Plaintiff's speculation about what a jury might do in the face of these undisputed facts cannot defeat summary judgment. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) (affirming summary judgment when the record evidence did not refute that the decisionmaker honestly believed the reason for taking the adverse employment action) (citing *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006) ("In assessing pretext, a

9

court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its states reasons to be credible.")); *Belyakov v. Leavitt*, 308 Fed. Appx. 720, 730 (4th Cir. 2009) (per curiam) (affirming summary judgment when a nonmovant "fails to provide evidence that the defendant's explanation is unworthy of credence." (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000))).

In addition to relying on the possibility that a jury might ignore or not accept undisputed facts, Barnhill also identifies several pieces of evidence that she contends allow an inference of pretext. In that regard, Barnhill points to the filed declaration of a colleague who states that ASAC Shepherd said to the declarant, "This is what she gets for being a hard head." [Doc. No. 56-1] at 42 ¶ 9. However, the declarant also states that "I took his commentary to mean that if as supervisors we attempted to correct or in some way address subordinate performance issues, we could be subject to having to address complaints about our own performance." *Id*. at 42-43. This statement clearly does not evidence that ASAC Shepherd either had knowledge of or was referring to Barnhill's EEO complaint when Shepherd allegedly made this statement.

Barnhill also claims that there is evidence she was on "highway therapy," a purportedly colloquial term for a punitive assignment that Barnhill argues reflects the retaliatory nature of her temporary duty assignment. But SAC Brown denied ever using the term to describe Barnhill's temporary duty assignment, [Doc. No. 52-1] at 139-140 (SAC Brown deposition),[6] and the only

---

[6] Brown discussed the term 'highway therapy' in relation to Barnhill's temporary reassignment in his deposition testimony:
> Q Okay. Focusing on the term "highway therapy," do you know whether that is a widely used term in DEA employee slang?
> ...
> A It is a term I have heard used. I heard it more in a prior division. It is not a term I have ever used about - - certainly not about this situation or about any situation where I was in charge of. It's a slang term for someone being assigned a TDY duty based on a perception of wrongdoing.
> ...
> Q Did you have an opportunity, whether you took it or not, to reassure her that it wasn't punishment that she was being sent to New Orleans for?

10

evidence that this term was used to describe Barnhill's temporary duty assignment comes from an individual who told Barnhill that he overheard a conversation between two unidentified individuals in New Orleans who referenced that Barnhill was on "highway therapy." [Doc. No. 52-1] at 59 (Barnhill deposition). This inadmissible hearsay clearly does not create a material issue of fact concerning pretext.

Finally, Barnhill also argues that a jury could find Defendant's legitimate reasons pretext for retaliation plausible because there is evidence that the management review was considered and not implemented earlier than January 2016. [Doc. No. 56] at 8. However, this unsupported speculation does not demonstrate the mendacity of Defendant's legitimate non-retaliatory reason nor does it create a genuine issue of material fact which would preclude summary judgment.

For the above reasons, Barnhill has failed to establish a causal connection between her alleged protected activity and an adverse employment action, thereby failing to establish a *prima facie* case. She has also failed to present evidence sufficient to establish that Defendant's legitimate non-retaliatory reasons for any adverse employment actions was a pretext for unlawful retaliation. Accordingly, Defendant is entitled to judgment as a matter of law with respect to her remaining claims.

---

> A I took that opportunity clearly in the memorandum. Again, I just don't recall whether she and I discussed this or not. I can say that had we talked about it, I would have said that because at that point no decisions had been made, I was not trying - - this was not punishment for Ms. Barnhill in my mind in any way shape, or form.
> Q You're aware of what the assignment to New Orleans meant for her, for her life; right?
> ...
> A Yes. And within that confine I tried to make it as reasonable as possible. I never asked her to drive outside of work hours. As the memo says, basically I gave her all day at the beginning of the workweek and the end of a workweek to take those days to drive. She was paid full TDY for things. I knew - - I'm not going to pretend like it wasn't a burden or a hardship on Ms. Barnhill, but I tried to do everything within my power to make it work for her, for lack of a better term.

[Doc. No. 56-1] at 135-137.

**Conclusion**

Based on the foregoing reasons, it is hereby

ORDERED that the Defendant's Motion for Summary Judgment, [Doc. No. 51], be, and the same hereby is GRANTED; and it is further

ORDERED that all of the Plaintiff's claims in this civil action be, and the same hereby are, DISMISSED.

The Clerk is directed to enter judgment against the Plaintiff and in favor of the Defendants pursuant to Federal Rule of Civil Procedure 58 and to forward copies of this Order to all counsel of record.


Alexandria, Virginia
July 31, 2023

_____
Anthony J. Trenga
Senior U.S. District Judge